Filed 2/25/15  P. v. Dorsey CA2/3

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>LYNN JOSEPH DORSEY,<br><br>    Defendant and Appellant. | B252186<br><br>(Los Angeles County<br>Super. Ct. No. GA086576) |

APPEAL from a judgment of the Superior Court of Los Angeles County,

Candice J. Beason, Judge.  Affirmed.

Ferrentino & Associates and Correen Ferrentino, under appointment by the Court

of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Lance E. Winters, Senior Assistant

Attorney General, Victoria B. Wilson, Supervising Deputy Attorney General, and

Chung L. Mar, Deputy Attorney General, for Plaintiff and Respondent.

Defendant Lynn Joseph Dorsey was convicted of three counts of threatening Jana W. (Pen. Code, § 422, subd. (a)) and one count of possession of a firearm by a felon (*id.*, § 29800, subd. (a)(1)).[1] On appeal he contends: (1) the evidence is insufficient to support his convictions for criminal threats; (2) the trial court erred by failing to instruct the jury on the lesser included offense of attempted criminal threats; (3) the court erred by limiting defense counsel's cross-examination of the victim; and (4) the court erred by failing to make a formal determination of his competence to stand trial. Because defendant has not shown prejudicial error, we affirm the judgment.[2]

### FACTUAL AND PROCEDURAL BACKGROUND

An information filed in July 2012 charged defendant with four counts of criminal threats (§ 422, subd. (a)), one count of kidnapping (§ 207, subd. (a)), and one count of possession of a firearm by a felon (§ 29800, subd. (a)(1)). The information alleged as to all six counts that defendant was released from custody on bail or on his own recognizance at the time of the commission of the offense (§ 12022.1). Defendant pled not guilty to all counts and denied all allegations.

In August 2012, defense counsel expressed a doubt as to defendant's competence to stand trial. Counsel asked the trial court to appoint Dr. Ronald Markman to conduct a mental health evaluation and suspend the criminal proceedings. The trial court granted defense counsel's request. After receiving Dr. Markman's report, counsel stated, "Based on his report, which is confidential to me, I'm satisfied that my client is able to stand trial, and we're ready to proceed, and request that criminal proceedings be reinstated." The court reinstated the proceedings in October 2012.

The trial commenced in July 2013. Before opening statements, defendant pled guilty to possession of a firearm and admitted the section 12022.1 allegation as to that

---

[1]     All statutory references are to the Penal Code unless stated otherwise.

[2]     We deny defendant's petition for writ of habeas corpus in a separate order filed concurrently with this opinion.

2

count. Before the trial was completed, the court dismissed one of the criminal threats counts.

Jana W. testified as follows. She first met defendant when they were 15 years old. They dated for one year before she moved away. She returned to the Los Angeles area after 25 years, and they started sharing an apartment in September 2010. They separated in February 2012 after defendant became verbally aggressive. However, in May 2012 she invited defendant to return to the apartment because she needed financial help and he needed a place to stay.

After defendant moved back in with Jana W., she observed what she believed were signs of defendant's paranoia and delusion. For example, he disconnected the television set to prevent people from watching him and insisted that the neighbors were agents or police conducting surveillance on him. She also saw him smoking what she believed to be methamphetamine. Defendant began keeping a large kitchen knife on the entertainment center in the living room. He also kept an unloaded handgun and repeatedly asked Jana W. to buy bullets for him because he was convinced that someone was trying to kill him. She declined. She was frightened of him, but loved and cared for him. Jana W. testified that after she hid the large kitchen knife and the other knives in the apartment, defendant placed a hammer on the entertainment center.

Jana W. had a job interview scheduled for noon on June 6, 2102. During the night of June 5 to June 6, defendant kept entering the bedroom, telling Jana W. that he knew that she had been sleeping with another man and taunting her. Jana W. testified that defendant was being very aggressive and that she was scared. She testified that he told her repeatedly that night that he was going to "fuck me up." Jana W. tried to calm him down but was unable to do so, so she tried to be affectionate and engaged in sexual relations with him.

Afterwards, defendant told Jana W. that he could tell that she had been with someone else. Defendant stated that he knew that she had given that man money that defendant had given Jana W. for rent, and that the man had been in the apartment and had seen all of her tattoos. Defendant also stated that Jana W. had given that man

3

a memory card belonging to defendant and that if he did not get it back, "I'll kill you and him." Defendant made this statement sometime between midnight and 3:00 a.m. This statement frightened Jana W. After defendant left the bedroom, she sent his mother a text message stating that she needed help. He continued to taunt her throughout the night, stating, "Why don't you tell me the truth about what you are doing?" She pleaded with him to leave her alone and allow her to sleep before her job interview. She eventually fell asleep.

Defendant awakened her at 3:00 a.m. He said that someone was coming to kill him and that they needed to leave the apartment. Jana W. declined. Defendant tried in vain to get her to leave and finally asked for her car keys and drove off in her car. He was gone for only 15 minutes before returning. He did not have keys to the apartment, so Jana W. unlocked the door to let him in. She returned to bed while defendant smoked methamphetamine from a pipe.

Defendant later returned to the bedroom and told Jana W. again that they had to leave the apartment. She told him that she was not going anywhere. Defendant left the apartment again and this time did not return until 7:30 a.m. He awakened Jana W. She told him that she needed more sleep and went back to sleep until 8:30 a.m. Her alarm sounded at that time. Defendant then straddled her shoulders and told her to perform oral sex on him. She did so.

Jana W. then left the apartment to take the dog for a walk. While she was outside she called defendant's mother seeking help. She left a message "that someone needed to come get him because I was scared." She made more phone calls and then returned to the apartment.

Defendant insisted that Jana W. leave the apartment with him, despite her job interview. He cursed and yelled at her to hurry up. She noticed that he had taken the hammer downstairs. She was frightened and left the apartment with him, although she was not properly dressed for her interview. He held her by the arm as they walked to her car without telling her where they were going. When she got in her car, she noticed the hammer in the back of the car.

4

On the morning of June 6, 2012, defendant drove recklessly on the freeway, weaving in and out of traffic and slamming on the breaks. At times, the car's speed approached 110 miles per hour. Jana W., who was in the passenger seat, cried and asked him to slow down. Defendant responded by stating "Shut the fuck up, stupid bitch. You lying-ass bitch. Stop that fake-ass crying." He again accused her of stealing his memory card and spoke of another man. She testified that he was "saying that if he didn't get those memory cards back, he's going to fuck me up."

They arrived at a Big 5 sporting goods before it was open. Defendant then drove off. When Jana W. asked why they were leaving, he stated that he was not going to allow the people who were after him to pull up and shoot him. Defendant drove around other shopping centers nearby for 10 or 15 minutes before returning to Big 5. When he got out of the car, Jana W. saw the handgun at his waist under his shirt. She testified, "I was very scared because he was very angry and agitated."

They entered the store, and defendant approached the gun counter. Jana W. whispered to a female cashier to please call 911 because defendant had an unloaded gun and was on drugs. Defendant was aggressive and impatient with the store employees. He called Jana W. over to him. She approached defendant, turned her back to him so that he could not see her face, and mouthed to an employee, "Don't help him." The employees seemed to understand and seemed to be stalling, while defendant grew increasingly agitated. Defendant eventually decided to leave the store and told Jana W., "Let's go." While walking to the car, defendant cursed at Jana W. and called her "stupid bitch."

Defendant got into the car, and Jana W. followed him. She testified, "I was scared if he drove us again, that we were going to get into a wreck." While he was distracted and fumbling with something, she grabbed the keys from the ignition and jumped out of the car. Defendant became very angry. He yelled and cursed at her, got out of the car, and slammed the door hard. He kicked the car, denting it. Defendant continued to curse and yell at Jana W. while walking toward her, stating, "You fucking stupid-ass bitch. I'm tired of you and your shit. I'm going to fuck you up when we get

home." Defendant then stopped approaching her and returned to the car. Sheriff's deputies then arrived and ordered defendant to the ground. He complied.

Store employees testified that defendant sought to purchase nine-millimeter hollow-point ammunition. They testified that Jana W. seemed frightened and that defendant was upset with her for taking so long to leave the store. One of the responding sheriff's deputies testified that defendant cursed at Jana W., stated that she had set him up, and stated while seated in a patrol car, "I'm going to kick that bitch's ass." The deputy also testified that Jana W. appeared to be frightened. Another deputy also testified that defendant stated that he was going to "kick her ass," referring to Jana W., and that she was distraught.

The defense presented no witnesses.

The trial court instructed the jury on one count of kidnapping and three counts of criminal threats. The prosecutor argued to the jury that count 1 for kidnapping was based on defendant holding Jana W. captive in the car while driving on the freeway; count 2 was based on defendant's statement to Jana W. after engaging in sexual relations that, if he did not get the memory card back, "I'll kill you and him;" count 3 was based on his statement while driving on the freeway that, if he did not get the memory cards back, he was going to "fuck you up;" and count 4 was based on his statement outside the store before his arrest, "I'm going to fuck you up when we get home."

The jury found defendant not guilty of kidnapping and guilty on all three counts of criminal threats. The court denied probation and sentenced him to a prison term totaling seven years. Defendant timely appealed the judgment.

### CONTENTIONS

Defendant contends the following: (1) the evidence is insufficient to support his three convictions for criminal threats; (2) the trial court erred by failing to instruct the jury on the lesser included offense of attempted criminal threats; (3) the court erred by limiting defense counsel's cross-examination of Jana W.; and (4) the court erred by failing to make a formal determination of his competence to stand trial.

6

*DISCUSSION*

1.      *Substantial Evidence Supports the Convictions*

Defendant contends the evidence is insufficient to support his three convictions for criminal threats because the jury could not reasonably infer from the evidence presented at trial that his threats caused Jana W. to be in sustained fear for her personal safety. Defendant expressly does not challenge the finding that he intentionally threatened Jana W. and that she experienced fear for her personal safety as a result. He argues that her fear was only momentary in each instance and her conduct during the incident was inconsistent with sustained fear. We conclude that substantial evidence supports his conviction on each count.

We review the sufficiency of the evidence to support a criminal conviction under the substantial evidence standard. Substantial evidence is evidence that is reasonable, credible, and of solid value such that a rational trier of fact could find the defendant guilty beyond a reasonable doubt. We view the evidence in the light most favorable to the judgment and accept as true all evidence tending to support the judgment, including all facts that reasonably can be deduced from the evidence. We affirm the judgment only if an examination of the entire record viewed in this light discloses substantial evidence to support the judgment. (*People v. Kraft* (2000) 23 Cal.4th 978, 1053*; People v. Jones* (1990) 51 Cal.3d 294, 314.)

Section 422, subdivision (a) states (italics added):

"Any person who willfully threatens to commit a crime which will result in death or great bodily injury to another person, with the specific intent that the statement, made verbally, in writing, or by means of an electronic communication device, is to be taken as a threat, even if there is no intent of actually carrying it out, which, on its face and under the circumstances in which it is made, is so unequivocal, unconditional, immediate, and specific as to convey to the person threatened, a gravity of purpose and an immediate prospect of execution of the threat, *and thereby causes that person reasonably to be in sustained fear for his or her own safety or for his or her immediate family's safety*, shall be punished by imprisonment in the county jail not to exceed one

7

year, or by imprisonment in the state prison." Fear is "sustained" within the meaning of the statute if it lasts for "a period of time that extends beyond what is momentary, fleeting, or transitory." (*People v. Allen* (1995) 33 Cal.App.4th 1149, 1156.)

Count 2 was based on defendant's statement to Jana W. sometime between midnight and 3:00 a.m. that, if he did not get the memory card back, "I'll kill you and him." Jana W. testified that this statement frightened her "because he got specific and said that he was going to kill me." When defendant left the bedroom after making this statement, Jana W. sent defendant's mother a text message stating that she needed help. She later fell asleep. Defendant awakened her at about 3:00 a.m. and urged her to leave with him, but she refused. Jana W. testified that she was "scared" when defendant left the apartment at that time and that she was "praying that—that all of this would end." She unlocked the apartment door for him when he returned approximately 15 minutes later.

This evidence is sufficient to support the finding that Jana W.'s fear for her personal safety caused by defendant's statement was sustained rather than momentary, fleeting, or transitory. Indeed, fear lasting for only 15 minutes, or as little as one minute, has been held to be sustained fear. (*People v. Fierro* (2010) 180 Cal.App.4th 1342, 1349.) A jury reasonably could conclude that her conduct after the statement was consistent with sustained fear for her personal safety. The fact that she unlocked the door for defendant when he returned to the apartment does not negate the evidence that defendant's statement caused her to experience sustained fear for her personal safety before that time.

Count 3 was based on defendant's statement to Jana W. while driving to Big 5 that, if he did not get the memory cards back, he was going to "fuck me up." Jana W. testified that she understood this statement to mean "that he was going to harm me physically." Defendant continued to drive recklessly after making this statement, despite Jana W.'s pleas to slow down. She testified that she was afraid they were going to crash.

After entering the store, defendant attempted to purchase ammunition for the gun he was carrying. Although he had told Jana W. that he needed the ammunition for protection from others, the jury reasonably could conclude that defendant's threat made to Jana W. in the car caused her to fear for her own safety in these circumstances. Jana W. testified on cross-examination that she did not want defendant to have any ammunition because "I thought I was in danger, he would be in danger, everyone would be in danger." Store employees testified that Jana W. seemed frightened, and her conduct in urging them to call 911 and to not sell him any ammunition was consistent with fear for her personal safety. We conclude that this evidence is sufficient to support the finding that Jana W.'s fear for her personal safety caused by defendant's statement made to her in the car was sustained rather than momentary, fleeting, or transitory.

Count 4 was based on defendant's statement to Jana W. outside the Big 5 store, before his arrest, "I'm going to fuck you up when we get home." Defendant made this statement after Jana W. had grabbed the keys from the ignition and stepped out of the car. She testified that he yelled at her, cursed her, slammed the car door hard, and kicked the car before making this statement. She testified that this statement frightened her and that, as he was walking toward her and cursing her after making this statement, she "was trying to think where I was going to run." Defendant stopped approaching her and walked back to the car before the sheriff's deputies arrived. Although Jana W. did not estimate the duration of this incident, a jury reasonably could conclude that the incident lasted for an appreciable period of time sufficient for her fear caused by the threat to be sustained rather than momentary, fleeting, or transitory.

2. *Any Error in Failing to Instruct on Attempted Criminal Threats as a Lesser Included Offense Was Harmless*

a. *Duty to Instruct on Lesser Included Offenses*

A trial court must instruct the jury not only on the crime charged by the prosecution but also on lesser offenses that are both included within the crime charged and supported by the evidence. (*People v. Barton* (1995) 12 Cal.4th 186, 190.) The obligation to instruct on lesser included offenses arises sua sponte even if the defendant

9

objects to the instruction for tactical reasons. (*Id.* at pp. 195, 198.) A lesser offense is necessarily included within a greater offense if the elements of the greater offense or the facts alleged in the accusatory pleading include all of the elements of the lesser offense. (*People v. Birks* (1998) 19 Cal.4th 108, 117.)

A lesser offense is supported by the evidence if a jury reasonably could conclude that the defendant committed the lesser offense but not the greater offense. (*People v. Breverman* (1998) 19 Cal.4th 142, 162; *People v. Barton*, *supra*, 12 Cal.4th at pp. 190, 201 & fn. 8.) Substantial evidence may support an instruction on a lesser included offense even if the lesser offense is inconsistent with evidence or argument presented by the defendant, such as where the defendant denies elements common to both the lesser and greater offense or argues a defense inconsistent with the lesser offense. (*Breverman*, at pp. 162-164 & fn. 10; *Barton*, *supra*, at pp. 202-203.)

The failure to instruct on a lesser included offense is reversible error if and only if it is reasonably probable that the defendant would have obtained a more favorable result absent the error. (*People v. Breverman*, *supra*, 19 Cal.4th at pp. 177-178.) Although the evidence may be legally sufficient to support an instruction on a lesser included offense, the relative weight of the evidence may compel the conclusion that there is no reasonable probability that the failure to instruct affected the result. (*Id.* at p. 177.)

b. *Any Error Was Harmless*

A defendant commits the crime of attempted criminal threat if the defendant specifically intends to commit the crime of criminal threat, under circumstances sufficient to cause a reasonable person to be in sustained fear for his or her safety or for his or her family's safety, and the defendant performs an act that goes beyond mere preparation and indicates that he or she is putting a plan into action. (*People v. Chandler* (2014) 60 Cal.4th 508, 525; *People v. Toledo* (2001) 26 Cal.4th 221, 230-231.) "The crime of attempted criminal threat encompasses situations where a defendant intends to commit a criminal threat 'but is thwarted from completing the crime by some fortuity or unanticipated event.' [Citation.]" (*Chandler*, *supra*, at

10

p. 515.) The parties agree that attempted criminal threat is a lesser included offense of the crime of criminal threat. (See *id.* at p. 513; *Toledo*, *supra*, at p. 226.)

After reviewing the appellate record, we conclude that there is no reasonable probability that the jury would have found defendant guilty of the lesser charge on any count and not guilty of the greater offense of making a criminal threat. The nature of defendant's threats to Jana W., his conduct during the incident, her conduct during the incident, and witness testimony all strongly indicate that the persistent threats, and each of them, caused Jana W. to be in sustained fear for her own safety. In fact, defense counsel did not even argue to the jury that Jana W.'s fear was not sustained; instead, he argued that the evidence failed to show that the threats were immediate and unconditional, an issue that defendant does not argue on appeal.

3.   *Any Error in Excluding Evidence of the Victim's Prior Misdemeanor Conduct Was Harmless*

Jana W. testified in a hearing under Evidence Code section 402 outside the presence of the jury that California Institute of Technology terminated her employment in February 2012 because she used a company credit card for personal purchases without authorization. The amount charged was less than $500, and she repaid her employer. She testified that her employer did not accuse her of embezzlement or call the police. In fact, she was told she was eligible to be rehired after she repaid the money.

The trial court excluded any evidence of Jana W.'s misuse of the credit card, stating, "because it does not sound like felony conduct and nothing was charged against her, then the court would not be allowing it unless you are able to prove it up through witnesses." Defendant contends the trial court erred by limiting defense counsel's cross-examination of Jana W. on this issue.

Evidence of past misdemeanor conduct involving moral turpitude is admissible for purposes of impeachment. (*People v. Wheeler* (1992) 4 Cal.4th 284, 295-296.) A witness's own admission that he or she committed such conduct is admissible for this

11

purpose. (*People v. Capistrano* (2014) 59 Cal.4th 830, 866-867.) The trial court erred to the extent that it ruled to the contrary by requiring corroborating testimony.

However, we conclude that any error was harmless. The probative value of the excluded evidence for impeachment purposes was weak in light of the dollar amount involved, the fact that Jana W. repaid the money and was told that she was eligible to be rehired, and the fact that her employer never accused her of embezzlement or called the police. Moreover, defense counsel did not argue that Jana W. was untruthful, but instead acknowledged that "there's no reason to disbelieve what she's telling you." The evidence of defendant's guilt was strong. On this record, there is no reasonable probability that the exclusion of evidence prejudicially affected the verdict. (*People v. Watson* (1956) 46 Cal.2d 818, 836.)

Defendant also argues that the exclusion of evidence violated his federal constitutional right to due process, his right to confront a witness against him, and his right to present a meaningful defense. We disagree. Routine evidentiary rulings such as this one do not implicate a criminal defendant's constitutional rights. (*People v. Jones* (2013) 57 Cal.4th 899, 957.) "Instead, because the trial court merely excluded some evidence that could have impeached a complaining witness and did not preclude defendant from presenting a defense, any error would be one of state evidentiary law only. [Citation.]" (*Ibid.*)

4.     *Defendant Was Not Entitled to a Competence Hearing*

A defendant is presumed competent unless it is proved otherwise by a preponderance of the evidence. (§ 1369, subd. (f).) As a matter of due process, the state may not try or convict a mentally incompetent defendant. *(Drope v. Missouri* (1975) 420 U.S. 162, 172 [43 L.Ed.2d 103, 95 S.Ct. 896]; *People v. Welch* (1999) 20 Cal.4th 701, 732.) Under section 1367, subdivision (a), a defendant "cannot be tried or adjudged to punishment . . . while that person is mentally incompetent." Section 1368, subdivisions (a) and (b), respectively, require the trial court to initiate proceedings in order to determine a defendant's present sanity if "a doubt arises in the mind of the judge as to the mental competence of the defendant" or "[i]f counsel

12

informs the court that he or she believes the defendant is or may be mentally incompetent." However, a defense counsel's expressed belief that the defendant might be mentally incompetent does not automatically trigger a section 1369 competency trial. "Counsel's assertion of a belief in a client's incompetence is entitled to some weight. But unless the court itself has declared a doubt as to the defendant's competence, and has asked for counsel's opinion on the subject, counsel's assertion that his or her client is or may be incompetent does not, in the absence of substantial evidence to that effect, require the court to hold a competency hearing." (*People v. Mai* (2013) 57 Cal.4th 986, 1033.)

Here, the trial court never expressly declared any doubt concerning defendant's competence to stand trial. While defendant acknowledges this, he argues that the court impliedly expressed a doubt concerning his competence and therefore was required to make a formal determination of competence. In support of this argument, defendant cites evidence of his mental and emotional instability at the time of the incident in June 2012, defense counsel's initial expression of doubt concerning his competence to stand trial, and the court's suspension of proceedings and appointment of Dr. Markman to examine him. We conclude that there is no substantial evidence that defendant was incompetent to stand trial.

While defense counsel initially expressed a doubt concerning defendant's competence, he was satisfied that defendant was competent to stand trial after he reviewed Dr. Markham's report.[3] The court's appointment of Dr. Markham to prepare a report pursuant to section 1368 was not an expression of doubt; it was only a means to enable defense counsel to acquire information for use in deciding whether to claim incompetence. A trial court appointing a mental health expert to prepare a report

---

[3]     We have reviewed Dr. Markman's confidential report dated September 28, 2012, which is included in the appellate record. Dr. Markman concluded that defendant was competent to stand trial because he clearly understood the nature and purpose of the proceedings and was capable of cooperating with counsel in his defense. The report contains no substantial evidence of incompetence.

13

pursuant to section 1368 is not obligated to conduct a competence hearing absent substantial evidence of incompetence. (*People v. Johnson* (1991) 235 Cal.App.3d 1158, 1166.) Furthermore, evidence of defendant's mental state at the time of the incident in June 2012 when he was smoking methamphetamine is not substantial evidence of his mental state more than one year later at the time of trial in July 2013. (*People v. Hayes* (1999) 21 Cal.4th 1211, 1281 ["Evidence regarding past events that does no more than form the basis for speculation regarding possible current incompetence is not sufficient"].) In sum, the trial court did not err in failing to make a formal determination of defendant's competency.

### DISPOSITION

The judgment is affirmed.

### NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

LAVIN, J.*

WE CONCUR:

KITCHING, Acting P. J.                    ALDRICH, J.

---

* Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

14